UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
BARRY VALLEN,

               Plaintiff,

                                    MEMORANDUM & ORDER
    -against-                    15-CV-0703(JS)(ARL)

DR. ROGER BEAU PLAN, DR. BILAL
KHAN, and DR. LEONICA CARLOTTA,

               Defendants.
----------------------------------X
APPEARANCES
For Plaintiff:      Barry Vallen, pro se
                    Pilgrim State Psychiatric Center
                    Bldg. 81, Ward 401
                    998 Crooked Hill Road
                    West Brentwood, NY 11717

For Defendants:     Lori L. Pack, Esq.
                    Office of the N.Y. State Attorney General
                    300 Motor Parkway, Suite 205
                    Hauppauge, NY 11788

SEYBERT, District Judge:

       Pending before the Court is a motion by Dr. Roger Beauplan ("Dr. Beauplan"), Dr. Bilal Khan ("Dr. Khan") and Dr. Leoncia Carlotta ("Dr. Carlotta" and collectively, "Defendants") to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 10). The motion is unopposed. For the following reasons, Defendants' motion is GRANTED IN PART.

BACKGROUND

       Plaintiff Barry Vallen commenced this action on February 9, 2015 alleging, pursuant to 42 U.S.C. § 1983 ("Section

1983"), that Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment Rights. (See Compl. ¶ IV and at 6.) Plaintiff is presently a patient at Pilgrim State Psychiatric Hospital.[1]

Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 10.) Defendants argue that the Complaint should be dismissed because: (1) Plaintiff's Section 1983 claims are barred by the Eleventh Amendment; and (2) the Defendants have qualified immunity. (Defs.' Br., at 1-4.)

## THE COMPLAINT[2]

Plaintiff's brief handwritten Complaint is submitted on the Court's Section 1983 complaint form and alleges the following it its entirety:[3]

---

[1] Plaintiff is an insanity acquitee having "bludgeoned his parents to death while they slept" and "was charged with two counts of Murder in the Second Degree but was found not responsible by reason of mental disease or defect." Vallen v. Connelly, 99-CV-9947, 2004 WL 555698, *1 (S.D.N.Y. Mar. 19, 2004); see also Vallen v. Miraglia, 10-CV-4225, 2010 WL 5491187, at *1-2 (E.D.N.Y. Dec. 30, 2010); Defs' Br., Docket Entry 10-1, at 1.

[2] The following facts are taken from Plaintiff's Complaint and are presumed to be true for the purposes of this Memorandum and Order.

[3] The excerpts from the Complaint are reproduced here exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected or noted.

2

> On December 11, 2014 Dr. Beauplan - Dr. Khan Dr. Carlotta came to me and showed me a Letter stating concern from an agency about some of my medications I take. From a severe back injury from another patient and 2 surgeries later I am on Soma - Celebrex - and Percoset. De. Beauplan led the group t0 then call me an addict, Dr. Khan and Dr. Carlotta also said that to me. When I stated I would be in unbearable pain without them, they proceeded to tell me they would be stopping all those medications because I was an addict. Dr. Beauplan kept saying it over and over again getting right up on me in the calming room. This room is for quiet contemplation whereas plaintiff was verbally assaulted and humiliated by these so called doctors, Roger Beauplan a so called keeper of sanity (a psychiatrist) pushing plaintiff over the edge delibertaly inflicting pain and suffering causing catastophic fear of unknown health problems. Dr. Khan having an oath not to do harm to a patient, Dr. Carlotta the same what was their point. Dr. Beauplan has regularly been a bad doctor to plaintiff not speaking to him for over one year, making him be in extra pain by forcing him to walk further than he has to laughing at his increased pain yelling at me "you are a drug addict." My mind reeling with the verbal assault my senses appalled, shocked, to much for me to handle, I am sent into another world of confusion and fear, humiliated by their statements, what did they think would be my reaction a mental patient a chronic paranoid schyzophernic my mind could have snapped. What if I had done something physical becoming unaware of what was going on. So many situations could have developed, none of them good. Can Dr. Beauplan, Dr. Khan, and Dr. Carlotta actually say they were trying to help me. . . .

(Compl. ¶ IV and at 6-7.)

> These doctors telling me I must go to programs. The deliberate infliction of pain, unnecessary and wanton is a violation of my Eighth Amendment Rights . . . .

(Compl. ¶ IV.A.) As a result of the foregoing, Plaintiff seeks to recover $75,000 from Dr. Beauplan, $25,000 from Dr. Khan, and $25,000 from Dr. Carlotta. (Compl. ¶ V.) In addition, Plaintiff seeks "an end to the lowering of my medications [and] to see an outside psychiatricst-psychologist medical doctor and social worker trained in treating trauma." (Compl. ¶ V.)

## DISCUSSION

The Court will first set forth the applicable legal standards before turning to Defendants' motion more specifically.

## I. Legal Standards

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678,

129 S. Ct. at 1949; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679, 129 S. Ct. at 1950. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

While pro se plaintiffs enjoy a somewhat more liberal pleading standard, see Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (internal quotation marks and citation omitted)), they must still comport with the procedural and substantive rules of law, see Colo. Cap. v. Owens, 227 F.R.D. 181, 186 (E.D.N.Y. 2005).

II. Defendants' Motion

Defendants argue that Plaintiff's claims must be dismissed because they are barred by Eleventh Amendment immunity and/or qualified immunity. (Defs.' Br. at 4-7.)

A. Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.  "'The reach of the Eleventh Amendment has . . . been interpreted to extend beyond the terms of its text to bar suits in federal courts against states, by their own citizens or by foreign sovereigns. . . .'" State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007) (ellipses in original) (quoting W. Mohegan Tribe & Nation v. Orange Cty., 395 F.3d 18, 20 (2d Cir. 2004)).

1. Claims Seeking Monetary Damages

Eleventh Amendment immunity also extends to suits against state officials in their official capacities. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (internal citations omitted).

Here, insofar as Plaintiff's Section 1983 claims seek monetary damages against Defendants, all of whom are alleged to be state actors sued in their official capacities, and because New York state has not waived its sovereign immunity for suits under

6

Section 1983 (see, e.g., Mamot v. Bd. of Regents, 367 F. App'x 191, 192 (2d Cir. 2010) ("It is well-established that New York has not consented to § 1983 suits in federal court . . . .") (citing Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 38–40 (2d Cir. 1977)), Defendants are immune from such suits in their official capacity. Moreover, "there is no subject matter jurisdiction over Plaintiff's claims for monetary relief against the [ ] defendants as the Supreme Court has stated that 'neither a State nor its officials acting in their official capacities are persons under § 1983.'" Casaburro v. Giuliani, 986 F. Supp. 176, 182 (S.D.N.Y. 1997) (quoting Will, 491 U.S. at 71, 109 S. Ct. at 2312)).

Accordingly, Plaintiff's Section 1983 claims seeking monetary damages are clearly barred by the Eleventh Amendment. Accordingly, this prong of Defendants' motion to dismiss is GRANTED and these claims are DISMISSED WITH PREJUDICE pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

2. Claims Seeking Injunctive Relief

Suits against state officials in their official capacities are permitted for prospective injunctive relief to stop ongoing violations of federal law. Mary Jo C. v. N.Y. State &

Local Ret. Sys., 707 F.3d 144, 166 (2d Cir. 2013); see also Kentucky v. Graham, 473 U.S. 159, 169 n. 18, 105 S. Ct. 3099, 3107, 87 L. Ed. 2d. 114 (1985) (Eleventh Amendment immunity does not extend to injunctive or declaratory actions brought against state officials in their official capacities.). To the extent Plaintiff seeks prospective injunctive relief against the Defendants to "end the lowering of [his] medications" and to allow him to "see an outside psychiatricst-psychologist medical doctor and social worker trained in treating trauma" (Compl. ¶ V), such claims are not barred by the Eleventh Amendment. Accordingly, the Court next turns to the substance of Plaintiff's deliberate indifference claims seeking injunctive relief.

    3. <u>Deliberate Indifference Claims</u>

Plaintiff claims that the Defendants' "deliberate infliction of pain, unneccessary [sic] and wanton is a violation of my Eighth Amendment rights." (Compl. ¶ IV.A.) Individuals involuntarily committed to state custody, such as Plaintiff, have constitutionally-protected liberty interests in adequate food, shelter, clothing, medical care, and conditions of reasonable care and safety. <u>Youngberg v. Romeo</u>, 457 U.S. 307, 324, 102 S. Ct. 2452, 2458-59, 73 L. Ed 2d 28 (1982). "The rights of patients who are involuntarily committed have been likened to the rights of

detainees awaiting trial." James v. Morgan, 13-CV-0526, 2014 WL 841344, *2 (N.D.N.Y. Mar. 4, 2014) (citing Serna v. Goodno, 567 F.3d 944, 948 (8th Cir. 2009) ("an involuntarily committed person's Constitutional claim 'should be evaluated under the . . . standard usually applied to . . . claims brought by pretrial detainees"); quoting Buthy v. Comm'r of Off. of Mental Health of N.Y., 818 F.2d 1046, 1051 (2d Cir. 1987) ("applying the levels of protection afforded pre-trial detainees under the Due Process Clause to persons confined due to an acquittal by reason of insanity or their incompetence to stand trial"). Because Plaintiff was involuntarily committed at the time of the challenged conduct, his deliberate indifference claims are analyzed under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. See Groves v. New York, 09-CV-0412, 2010 WL 1257858, at *6 (N.D.N.Y. Mar. 1, 2010).[4]

To establish a constitutional violation arising out of inadequate medical treatment, "a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Johnson v. Wright,

---

[4] Such distinction is of no moment because the same standard applies to Fourteenth Amendment medical care claims involving non-prisoners as to Eighth Amendment medical claims regarding prisoners. See Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009) ("Claims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment.").

9

412 F.3d 398, 403 (2d Cir. 2005) (alteration in original) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976)). "[T]he deliberate indifference standard embodies both an objective and subjective prong." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). The objective prong requires the prisoner to allege a sufficiently serious injury. Id. The Second Circuit has defined a sufficiently serious injury as "a condition of urgency, one that may produce death, degeneration, or extreme pain." Id. (internal quotation marks and citation omitted). The subjective prong requires the prisoner to show the charged official acted with a "sufficiently culpable state of mind." Id. The United States Supreme Court has stated that the subjective element "'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" Id. (elipsis and alteration in original) (citing Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811 (1994)).

Importantly, "mere allegations of negligent malpractice do not state a claim of deliberate indifference." Hathaway, 99 F.3d at 553; see also Estelle, 429 U.S. at 106, 97 S. Ct. 285, ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of

medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.")

Here, Plaintiff alleges that the Defendants lowered the doses of his prescription medication because, in their medical judgment, he was "an addict" and that such doses of medication were no longer medically necessary. (Compl. ¶ IV.) In addition, Defendants are alleged to have advised Plaintiff to "go to programs" (presumably treatment programs available at the institution) rather than continue with the higher doses of medication. (Compl. ¶¶ IV, IV.A.) Thus, Plaintiff's allegations make clear that while he may have disagreed with the course of treatment, Defendants were not deliberately indifferent to Plaintiff's medical needs. See Cephas v. Nassau Cty. Corr. Ctr., No. 12-CV-1445, 2014 WL 537576, at *5-6 (E.D.N.Y. Feb. 10, 2014) (dismissing the plaintiff's deliberate indifference claim against Armor because, even though the plaintiff may not have received the medication he wanted, he did receive medication). Accordingly, the Complaint fails to state a deliberate indifference claim and it is thus DISMISSED pursuant to FED. R. CIV. P. 12(b)(6).[5]

---

[5] Given the dismissal of the Complaint for failure to state a claim upon which relief may be granted, the Court need not address Defendants' argument that qualified immunity bars Plaintiff's claims.

III. <u>Leave to Replead</u>

The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." <u>Hayden v. Cnty. of Nassau</u>, 180 F.3d 42, 53 (2d Cir. 1999); <u>see</u> <u>also</u> FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). In addition, leave to replead should be liberally granted to <u>pro</u> <u>se</u> litigants. <u>Chavis v. Chappius</u>, 618 F.3d 162, 170 (2d Cir. 2010)). Accordingly, Plaintiff is GRANTED LEAVE TO AMEND his Complaint in accordance with this Memorandum and Order. Any Amended Complaint shall be filed within thirty (30) days from the date of this Memorandum and Order and shall be title "Amended Complaint" and shall bear the same docket number as this Memorandum and Order, 15-0703(JS)(ARL). Plaintiff is cautioned that his failure to timely file an Amended Complaint will lead to the dismissal of his Complaint with prejudice and this case will be closed.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss (Docket Entry 10) is GRANTED IN PART and the Complaint is DISMISSED WITHOUT PREJUDICE pursuant to FED R. CIV. P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B)(ii). **Plaintiff is GRANTED LEAVE TO FILE AN AMENDED COMPLAINT within thirty (30) days from the date of this Memorandum**

**and Order and shall be title "Amended Complaint" and shall bear the same docket number as this Memorandum and Order, 15-0703(JS)(ARL). Plaintiff is cautioned that his failure to timely file an Amended Complaint will lead to the dismissal of his Complaint with prejudice and this case will be closed.**

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is DENIED for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the pro se Plaintiff.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

DATED:   February __4__, 2016
         Central Islip, New York